OPINION
{¶ 1} Defendant-appellant Nathan L. Vaughn presents this reopened appeal after pleading no contest to his father's murder and being sentenced by the Carroll County Common Pleas Court. The issues before us concern whether the trial court improperly excluded evidence on a proposed battered child syndrome defense and whether the court improperly imposed one day a year of solitary confinement upon appellant. The trial court's exclusion of evidence on battered child syndrome was a preliminary ruling on a motion in limine, and thus, after appellant pled no contest, the ruling remained interlocutory and nonreviewable on appeal. Hence, the conviction shall stand. We do find, however, that the trial court was without authority to impose solitary confinement upon appellant; as such, the portion of this sentence dealing with solitary confinement is vacated.
 STATEMENT OF FACTS {¶ 2} On the evening of June 4, 1996, sixteen-year-old appellant used his father's .22 magnum rifle to shoot his father three times. In his taped interview with police the next morning, he said that his dad had been yelling at him just before the shooting. He disclosed that his father kept the loaded rifle in the living room and has threatened to shoot him many times in the past. He related past incidents such as his father pulling a thirty foot ladder out from under him, throwing a hammer at him, trying to push him down the stairs, and hitting him numerous times, once with a shovel. He stated that although his father was sitting in a chair at the time of the shooting, he was still yelling and "getting madder and madder." He explained that his father did not hit him because he shot him first.
 {¶ 3} A psychologist later interviewed appellant for a total of 8.5 hours and spoke with other individuals about appellant. His October 8, 1996 report noted that appellant's father subjected him to degrading, aggressive, and hostile actions. He also noted that appellant said that his father had been making him work for him the past five years doing things such as building a house, pouring cement, and digging a lake. Although the psychologist concluded that "for the most part" the father did not physically harm appellant, he related that appellant informed him about some of the incidents described to police and a story about his father punching him. The psychologist described appellant as "an emotionally battered child," noting that he was subjected to "years of psychological terrorism" through threats and intimidation. He opined that the shooting was due to the years of damage to appellant's development and resulting inability to find an acceptable means of escape from the intolerable situation. The psychologist concluded that appellant's ability to plan and rationally direct his behavior was so impaired that he acted to survive.
 {¶ 4} Appellant was bound over from the juvenile division to the general division and indicted on one count of aggravated murder with a firearm specification. On December 18, 1996, the state filed a motion in limine seeking to preclude evidence on battered child syndrome. Appellant countered this motion, and the court heard arguments on the issue. As joint exhibits, the court reviewed the psychologist's report and appellant's statement to police. On February 10, 1997, the court granted the state's motion in a twenty-three page opinion and barred evidence of self-defense based upon battered child syndrome.
 {¶ 5} The court concluded that the evidence does not warrant the defense. The court summarized some facts by stating that the father was a disciplinarian who yelled when appellant did things wrong and had a bad temper. He noted appellant's statement that he had a lot of hate for his father. The court basically concluded that appellant was not a model child and that corporal punishment and threatening may have been the father's only options for dealing with him. The court noted that construing appellant's claims in the light most favorable to him, his father threw objects and was occasionally physical with appellant "but only to the extent of causing some bruises." The court pointed out that the father was not a drinker of alcohol and did not threaten appellant with the weapon (although according to appellant, the father did threaten to shoot him in the past). The court quotes appellant as saying, "I never even thought he would kill me," but omits the remainder of the sentence which continues, "but he always said he would, but I mean, I believe that if he got mad enough, he would. I'll guarantee that."
 {¶ 6} The court distinguished abused and battered children. The court then stated that appellant was neither physically abused nor battered. The court also concluded that battered child syndrome does not include emotional, mental, or psychological abuse. The court then went through the elements of self-defense and concluded that there is no evidence that the father was the first aggressor, there was no evidence of an imminent attack, and that appellant could have run away as he did last summer. Although some of the trial court's statements constituted misapplications of the law surrounding battered child syndrome, appellant chose to enter a plea rather than proceed with trial where he could attempt to introduce or proffer evidence on the defense.
 {¶ 7} In mid-March, the court was informed that a plea agreement had been reached. The court then set the change of plea for hearing. On April 22, 1997, appellant pled no contest to a reduced charge of murder with a firearm specification. He was sentenced to a three-year term of actual incarceration to be followed by an indefinite term of fifteen years to life in prison. The court ordered appellant to spend twenty-four hours per year in solitary confinement on the anniversary of his father's death.
 {¶ 8} Timely notice of appeal was filed. In December 1997, we notified counsel to prosecute the appeal or face dismissal of the case. In February 1998, we dismissed the appeal. In May 2001, we construed a pro se motion as a motion for reopening, granted the motion, and reopened the appeal. The case was fully briefed in May 2002.
ASSIGNMENT OF ERROR NUMBER ONE
 {¶ 9} Appellant's first assignment of error provides:
 {¶ 10} "THE TRIAL COURT ERRED IN FORBIDDING THE PRESENTATION BY APPELLANT VAUGHN OF ANY EVIDENCE IN SUPPORT OF HIS BATTERED-CHILD-SYNDROME DEFENSE."
 {¶ 11} Battered child syndrome is not an independent defense; however, it can support the affirmative defense of self-defense or justify a lesser included offense instruction on voluntary manslaughter.State v. Nemeth (1998), 82 Ohio St.3d 202, 205, 207. Self-defense generally has three elements: (1) the defendant was not at fault in creating the violent situation; (2) the defendant has a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape was the use of force; and (3) the defendant did not violate any duty to retreat. State v. Thomas (1997), 77 Ohio St.3d 323,326 (holding that there is no duty to retreat in one's own home even against a cohabitant, in a battered woman syndrome case).
 {¶ 12} Expert evidence on battered child syndrome is admissible when it is relevant and meets the requirements of Evid.R. 702. Nemeth,82 Ohio St.3d at 205. Pursuant to Evid.R. 702, a witness can testify as an expert if: (A) the testimony either relates to matters beyond the common knowledge or experience of laypersons or dispels a common misperception; (B) the witness is qualified as an expert; and (C) the testimony is based on reliable scientific, technical, or other specialized information.
 {¶ 13} The Nemeth Court noted that expert testimony on battered child syndrome helps dispel common misconceptions about the ability to escape, nonreporting of abuse, and "nonconfrontational killings" which "do not fit the general pattern of self-defense." Id. at 208. The expert testimony also helps explain the subjective beliefs held by the affected child concerning impending danger. Id.
 {¶ 14} The Court explained that child abuse need not be excessive or debilitating physical violence to affect the emotional and psychological development of the child. Id. at 212. "Abuse also includes such psychological trauma as sensory overload * * * and verbal overload with insults, accusation, and indoctrination." Id. Abused children exhibit a specific set of symptoms at the occurrence of an interpersonal triggering event; the symptoms include excessive anxiety, abnormal expressions of aggression or impaired impulse control, and dissociation. Id. at 213. The syndrome is generally accepted in the scientific community, as is battered woman syndrome which has previously been recognized as a proper topic for expert testimony. Id. at 212-213.
 {¶ 15} In its response brief, the state claims that battered child syndrome was not relevant in this case. Under Evid.R. 401, evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Id. at 207. Evidence that supports a defendant's explanation of the events and establishes state of mind is "clearly relevant" to his defense. Id. (noting that battered child syndrome was relevant to determine issues such as prior calculation and design, purpose, initiator of aggression, and belief of imminent danger).
 {¶ 16} In Nemeth, a sixteen-year-old male took his compound bow and shot his mom in the head and neck with five arrows as she lay sleeping on the couch. The trial court granted the state's motion in limine to preclude testimony on the battered child syndrome. At trial, the court again refused to admit the testimony and refused to instruct on voluntary manslaughter. The defense proffered the psychologist's testimony at the close of its case. The defendant was then convicted of murder. This court reversed and remanded, and the Supreme Court affirmed our reversal, stating that battered child syndrome was relevant and also admissible under Evid.R. 702.
 {¶ 17} In the case at bar, the psychologist's report reviewed by the trial court in ruling on the motion in limine did not actually contain a diagnosis that appellant was suffering from battered child syndrome; rather, it opined that appellant was an "emotionally battered child" and made conclusions of appellant's reactions that may characterize the syndrome. Although the defense was precluded from proffering additional psychological testimony at the plea hearing, such was not the place for a proffer. See Nemeth, 82 Ohio St.3d 202 (where the proffer took place at trial after the trial court reiterated its decision on the previously sustained motion in limine).
 {¶ 18} As the court advised the parties, a decision on a motion in limine is a pretrial, preliminary, precautionary, tentative, anticipatory ruling on the admissibility of evidence. Even where the court grants a motion in limine, the court may still admit the evidence during trial when it can better see the relevancy in the context of the other evidence. Thus, when a defendant pleads no contest prior to the actual evidentiary ruling on the admissibility of battered child syndrome, the issue is waived. In State v. Fisher (Sept. 25, 2001), 5th Dist. No. 01CA46, the court aptly noted that "[t]o allow a defendant to plead no contest immediately following an adverse evidentiary ruling and then appeal that ruling, would be to permit a defendant to interrupt his trial at any time to pass questions as to the admissibility of evidence on to the court of appeals" and stated that the appellate court shall not entertain pretrial evidentiary rulings where no trial is held.
 {¶ 19} In State v. Engle (1996), 74 Ohio St.3d 525, after the state's case but before any evidence was presented in the defendant's case, the state filed a motion in limine seeking to exclude evidence from the defendant's expert and other witnesses on the battered woman syndrome. The court granted the motion. The defendant then entered into a plea agreement with the state. The Court found that although a no contest plea does not preclude appellate review of a suppression motion, it does preclude appellate review of a motion in limine. Id. at 528-529 (Resnick, J. concurring) (where the concurring opinion received four votes and thus became part of the majority opinion). The Court expressly characterized the order excluding evidence on battered woman syndrome as a ruling on a motion in limine, rather than a ruling on a motion to suppress. Id. at 529. A trial court cannot create a label for a motion; rather, a motion to preclude evidence on battered woman or child syndrome is a motion in limine.
 {¶ 20} Finally, the Engle Court found that the trial court's ruling could have been changed anytime prior to or during trial, and thus, by pleading no contest, the defendant waived any issues surrounding the court's ruling on the motion. Id. Hence, Engle's assignment of error alleging the court erred in the ruling on the motion in limine was overruled. Accordingly, we likewise overrule appellant's assignment of error on this ground and hold that any error in ruling on the motion in limine is not reviewable on appeal.[1]
 ASSIGNMENT OF ERROR NUMBER TWO
 {¶ 21} Appellant's second assignment of error provides:
 {¶ 22} "THE TRIAL COURT ERRED IN IMPOSING A SENTENCE OF SOLITARY CONFINEMENT."
 {¶ 23} We should note that solitary confinement is now known as administrative control, and its imposition is governed by Ohio Adm. Code5120-9-13, which outlines the various procedures and grounds for placement. The sentencing statutes currently contain no provision authorizing a trial court to include solitary confinement as part of its sentence. Cf. Ex Parte Clark (1893), 50 Ohio St. 649 (where it can be seen that prior legislation allowed the sentencing court to specify what portion of the sentence if any would be served in solitary confinement). It is the legislature who fixes the available types of punishment.
 {¶ 24} An abundance of case law from the Eighth Appellate District and one case from the Ninth Appellate District support appellant's position. See, e.g., State v. Bruno (Feb. 8, 2001), 8th Dist. No. CR-375467A; State v. Hughes (Jan. 21, 1999), 8th Dist. No. 73279; Statev. Batton (Sept. 17, 1997), 9th Dist. No. 96CA6505; State v. Capone (July 20, 1995), 8th Dist. No. 67971; State v. Davis (June 8, 1995), 8th Dist. No. 64270; State v. Dawson (Nov. 18, 1993), 8th Dist. No. 63122; Statev. Eberling (Apr. 9, 1992), 8th Dist. Nos. 58559, 58560. These cases all vacated the portion of the defendant's sentence that imposed solitary confinement, noting that such sentence is not authorized by the legislature. Various aspects of the Davis case were appealed to the Supreme Court by the defendant. (1996), 76 Ohio St.3d 107. The state did not appeal; thus, the Court was not faced with the solitary confinement issue. However, the Court noted in the facts that the appellate court vacated the portion of the sentence dealing with solitary confinement. Id. at 109-110.
 {¶ 25} Although the state argues that the court can impose solitary confinement unless a statute prohibits such an action, we believe the proper decision is to follow the Eighth and Ninth Districts and hold that a sentencing court cannot specify that a defendant spend time in solitary confinement. As such, this assignment of error has merit, and the portion of the sentence imposing solitary confinement is vacated.
ASSIGNMENT OF ERROR NUMBER THREE
 {¶ 26} Appellant's third and final assignment of error states:
 {¶ 27} "ORIGINAL APPELLATE COUNSEL WAS INEFFECTIVE IN FAILING TO RAISE THE FOREGOING ASSIGNMENTS OF ERROR."
 {¶ 28} Because this is a reopened appeal, appellant raises arguments concerning ineffective appellate counsel pursuant to App.R. 26(B)(7). Appellant states that original appellate counsel engaged in deficient performance by failing to file a brief and by allowing the appeal to be dismissed. As evidence of prejudice, he points to the proposed merit argued under his two preceding assignments of error. This assignment of error has been consumed by our analyses and decisions on the first two assignments of error.
 {¶ 29} For the foregoing reasons, the trial court's judgment of conviction is hereby affirmed; the portion of the trial court's sentence ordering solitary confinement is hereby reversed. Judgment accordingly.
Donofrio, J., concurs.
Waite, J., concurs.
[1] We note that the Engle Court reversed on a separate assignment of error which explicitly alleged that the plea was not voluntary orknowing; the Court found evidence on the record that demonstrated that the defendant, the court, the prosecutor, and defense counsel all believed that the pretrial ruling was preserved for appeal and that this appealability "promise" was made to appellant on the record prior to his plea. Here, there are no such allegations before us.